IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BENJAMIN M. NARVAES and<br>ELENA V. NARVAES,<br><br>       Plaintiffs,<br><br>    vs.<br><br>EMC MORTGAGE CORPORATION and<br>FREMONT INVESTMENT AND LOAN,<br><br>       Defendants,<br><br>    and<br><br>FREMONT INVESTMENT AND LOAN,<br><br>       Third-Party<br>       Plaintiff,<br><br>    vs.<br><br>808 HOME MORTGAGE INC.,<br>FIDELITY NATIONAL TITLE<br>INSURANCE,<br><br>       Third-Party<br>       Defendants.<br>_____ | CIVIL NO. 07-00621 HG-LEK |

**FINDINGS AND RECOMMENDATION TO DENY
DEFENDANTS' MOTIONS FOR SANCTIONS**

Before the Court are Defendant EMC Mortgage
Corporation's ("EMC") Motion for Sanctions Against Benjamin M.
Narvaes, Elena V. Narvaes, John Harris Paer ("EMC Motion for
Sanctions") and Defendant/Third Party Plaintiff/Counterclaim
Defendant Fremont Investment and Loan's ("Fremont") Motion for
Sanctions Against Benjamin M. Narvaes, Elena V. Narvaes,

John Harris Paer ("Fremont Motion for Sanctions"), both filed on March 4, 2009.  Plaintiffs Benjamin M. Narvaes and Elena V. Narvaes (collectively "Plaintiffs") filed a memorandum in opposition to each motion on April 9, 2009, and EMC and Fremont filed their replies on April 17, 2009.  On March 16, 2009, Third Party Defendant/Counterclaimant 808 Home Mortgage, Inc. ("808 Mortgage") filed a statement of no position for each motion. These matters came on for hearing on April 29, 2009.  Appearing on behalf of EMC and Fremont were Jade Ching, Esq., and Laura Couch, Esq.  Appearing on behalf of Plaintiffs was John Harris Paer, Esq, and appearing on behalf of 808 Mortgage was Harvey Henderson, Jr., Esq.  After careful consideration of the motions, supporting and opposing memoranda, and the arguments of counsel, this Court HEREBY FINDS AND RECOMMENDS that the EMC Motion for Sanctions and the Fremont Motion for Sanctions be DENIED for the reasons set forth below.

<u>**BACKGROUND**</u>

On December 26, 2007, Plaintiffs filed their Complaint for Damages and Injunctive Relief ("EMC Complaint") in the instant action.  On December 29, 2008 Plaintiffs filed their Complaint for Damages and Injunctive Relief ("Wells Fargo Complaint") in <u>Narvaes v. Wells Fargo Bank, N.A., et al.</u>, CV 08-00584 DAE-KSC ("<u>Narvaes v. Wells Fargo</u>").  The defendants in that action are Wells Fargo Bank, N.A. ("Wells Fargo"), Nichole K.

Buendia, Blake Sato, Ivonne Machado, and 808 Mortgage.

## I.   EMC Complaint

The EMC Complaint states that, some time prior to November 2006,[1] Ms. Buendia, an employee and/or agent of 808 Mortgage, approached Plaintiffs about refinancing their home mortgage.  She represented herself as a mortgage solicitor and/or mortgage broker.[2]  [EMC Complaint at ¶¶ 6, 9-10.]  She stated that she could assist them with refinancing their mortgage for an initial rate of 8.8% for six months.  She would then further refinance the $650,000.00 mortgage to a thirty-year fixed-rate mortgage of between 5.5% and 5.875%.  The monthly payments would be approximately $2,800.00.  Plaintiffs agreed to the refinance with Fremont in reliance on the terms Ms. Buendia promised them. The loan is evidenced by a promissory note and secured by a mortgage on the property.  Ms. Buendia brought closing documents to Plaintiffs' home for them to execute on or about November 21, 2006.  Plaintiffs did not sign any of the documents before a

---

[1] The EMC Complaint includes several references to November 2007, which appear to be typographical errors that should refer to November 2006.

[2] The EMC Complaint notes that Mr. Sato was the principal broker of 808 Mortgage and was Ms. Buendia's and Ms. Machado's supervisor.  It further alleges that Mr. Sato, Ms. Machado, Ms. Buendia, and 808 Mortgage were acting as dual agents for Plaintiffs, as well as EMC and Fremont, at all relevant times. [EMC Complaint at ¶¶ 6-7.]  Ms. Machado is the notary who signed Plaintiffs' loan documents.  [Id. at ¶ 16.]  She testified in her deposition that she did not attend the closing and never met or spoke to Plaintiffs.

notary, nor did they sign a notary book.  According to Plaintiffs, Ms. Buendia did not explain any of the documents to them and she did not provide them with any copies of the documents they signed.  In the six months after the closing, Plaintiffs attempted to contact Ms. Buendia about the second refinancing she had promised, but she did not return their calls. [Id. at ¶¶ 10-17.]

In mid-July 2007, Plaintiffs received a Final HUD-1 statement and a recorded copy of their mortgage from Fidelity National Title.  Plaintiffs state that these were the only documents they ever received regarding the refinance.  At that time, Plaintiffs first learned, inter alia, of a 2.5466% brokerage fee paid to 808 Mortgage and a $22,000.00 prepayment penalty for the loan.  [Id. at ¶¶ 18-20.]  The EMC Complaint alleges that EMC is the present owner and holder of the note and mortgage.  [Id. at ¶ 24.]

On November 9, 2007 and December 12, 2007, respectively, Plaintiffs informed Fremont and EMC that they were rescinding the loan.  [Id. at ¶¶ 25, 28.]  In letters dated December 11 and 20, 2007, EMC declined rescission and threatened to immediately foreclose on Plaintiffs' home.  [Id. at ¶ 29; Exhs. D & E to EMC Complaint.]

The EMC Complaint alleges the following claims: violation of the Truth in Lending Act ("TILA"); and unfair and

4

deceptive acts or practices in violation of Haw. Rev. Stat. Chapter 480.  Plaintiffs seek, *inter alia*: actual damages to be proven at trial; statutory damages; an injunction preventing EMC and Fremont from further pursuing, by collection, foreclosure or otherwise, their security interest in the property; and rescission of the transaction, including all related security interests.

## II.  **Wells Fargo Complaint**

The Wells Fargo Complaint is based on the same factual allegations as the EMC Complaint.  In addition, it states that in mid-December 2008, Plaintiffs learned that Wells Fargo was the present owner of the mortgage loan.  On December 18, 2008, Plaintiffs sent Wells Fargo a letter stating that it was rescinding the loan.  [Wells Fargo Complaint at ¶ 29.]  The Wells Fargo Complaint alleges the same claims and seeks the same relief as the EMC Complaint.

## III.  **EMC Motion for Sanctions**

In the EMC Motion for Sanctions, EMC states that it was not involved in Plaintiffs' discussions with 808 Mortgage about the terms of the refinance, nor was it involved with the loan origination.  Further, it is only the servicer of the loan and it never owned the loan.[3]  EMC argues that sanctions under Federal

---

[3] EMC states that it purchased the rights to service the loan on May 1, 2007.

Rule of Civil Procedure 11 are warranted against Plaintiffs and Plaintiffs' counsel John Harris Paer because: Plaintiffs' claim for statutory damages under the TILA is time-barred; there are no facts to support EMC's liability under Haw. Rev. Stat. Chapter 480; and the filing of <u>Narvaes v. Wells Fargo</u> is an implicit acknowledgment that the EMC Complaint lacks legal and factual basis.  EMC seeks an award of attorney's fees and costs incurred since November 26, 2008,[4] and dismissal of the instant case.

EMC argues that there is no support for Plaintiffs' claims that Mr. Sato, Ms. Machado, Ms. Buendia, and 808 Mortgage were agents of EMC, or for their claim that EMC regularly imposes finance charges for credit it extends to its consumer customers. [EMC Complaint at ¶¶ 7-8.]  EMC has repeatedly informed Plaintiffs throughout the litigation that it did not hold an interest in the loan.  Upon learning that Plaintiffs had filed <u>Narvaes v. Wells Fargo</u>, counsel for EMC demanded that Plaintiffs dismiss the instant case, but Plaintiffs refused and continued to pursue discovery, which EMC has provided.

EMC argues that the EMC Complaint has no basis in law or fact and that Rule 11 authorizes the dismissal of the action and the award of attorney's fees and costs against both

---

[4] On that date, EMC first provided Plaintiffs' counsel with the legal and factual bases for EMC's position that Plaintiffs' complaint is meritless and demanded that Plaintiffs dismiss the action.  [Exh. I to EMC Motion for Sanctions.]

Plaintiffs and Plaintiffs' counsel.  EMC seeks an award of all of its attorney's fees and costs incurred since its counsel first informed Plaintiffs' counsel that their claims were without legal or factual merit.

EMC emphasizes that Rule 11 imposes a continuing duty to review, reexamine, and reevaluate a party's position as new facts come to light.  Even if the Court assumes that Plaintiffs and counsel made a reasonable and competent inquiry before filing the EMC Complaint, they continued to pursue the claims against EMC after learning that the claims had no legal or factual support.

EMC notes that, under the TILA, only a creditor or, under certain circumstances, assignees, are liable for damages or rescission.  Plaintiffs cannot sustain a claim for rescission against EMC, a servicer.  Plaintiffs' TILA claims against EMC therefore fail as a matter of law.

Even if Plaintiffs can bring a TILA claim against EMC, an action for damages under the TILA must be brought within one year from the date the loan documents are signed.  Plaintiffs admit that they entered into the loan at issue on November 21, 2006, but they did not file the instant case until December 26, 2007.  Plaintiffs' TILA claim is therefore time-barred.

Plaintiffs have not alleged any claims against EMC regarding the servicing of the loan.  The sole basis for

Plaintiffs' Chapter 480 claim is the alleged violations of the TILA.  Even if there was a violation of the TILA, that does not automatically constitute a violation of Chapter 480.  Plaintiffs' Chapter 480 claims are based on the making of the loan and the failure to provide proper TILA notices.  EMC, however, was not involved in any of these events.  EMC therefore argues that Plaintiffs brought and maintained their claims against EMC without a reasonable basis.

In their memorandum in opposition, Plaintiffs note that EMC, Fremont, and Ms. Buendia have been found to have engaged in a pattern of unfair and deceptive trade practices.  Plaintiffs emphasize that, prior to the filing of the instant case, EMC threatened to foreclose Plaintiffs' mortgage and EMC represented that it owned the loan.  EMC has never withdrawn the threat of foreclosure, and it never represented that it was pursuing foreclosure on behalf of another entity.  Plaintiffs argue that EMC's actions make it a necessary party for complete relief.  Plaintiffs also note that EMC refused to respond to discovery seeking the identity of each entity that ever owned Plaintiffs' loan.  Plaintiffs argue that, even if EMC never owned the loan, based on EMC's representations, it should be estopped from denying ownership.  Further, EMC's failure to answer a written request for the name, address, and telephone number of the present owner of the loan is a violation of 15 U.S.C. § 1641.

Even when EMC did identify Wells Fargo as the current owner of the loan, EMC did not provide Wells Fargo's complete name, its address, or its telephone number.

Plaintiffs acknowledge that, if EMC never owned an interest in the loan, it is not liable for rescission. Plaintiffs, however, argue that it is still an open issue of fact whether EMC ever owned an interest in the loan. If it did, EMC would be liable for rescission.

Even if Plaintiffs cannot sustain TILA claims against EMC, they can still establish violations of Chapter 480. Plaintiffs state that their Chapter 480 claim is not based solely on the alleged TILA violations. The failure to give timely documentation, the false representations about the terms of the loan, and the failure to disclose charges associated with the loan all support Chapter 480 violations independent of the TILA. EMC also violated Chapter 480 by falsely representing that it owned the loan and by threatening to foreclose a mortgage that was void for failure to include proper notarization. Plaintiffs therefore argue that they will be able to establish EMC's liability for the claims alleged in the EMC Complaint.

Plaintiffs also argue that the EMC Motion for Sanctions should be denied because it is untimely. If EMC knew from the outset of the case that it did not own the loan, there was no reason for EMC to wait until this late stage of the case to move

for Rule 11 sanctions.  Plaintiffs contend that a Rule 11 motion must be directed at a pleading and cannot be directed at Plaintiffs' failure to dismiss the action after EMC's November 26, 2008 letter.  Finally, Plaintiffs argue that the EMC Motion for Sanctions is intended to chill consumer litigation in Hawaii.

In its reply, EMC contests Plaintiffs' purported evidence of its pattern of unfair and deceptive practices.  EMC also argues that Plaintiffs do not contest the fact that EMC is only a servicer of the loan.  Plaintiffs present no evidence that EMC ever owned an interest in the loan.  Further, contrary to Plaintiffs' claims, EMC's December 11, 2007 letter stated that Plaintiffs' account had been forwarded to an attorney/trustee to initiate foreclosure proceedings.  The letter does not state that EMC owned the loan.  EMC also points out that foreclosure proceedings were not actually commenced.

EMC asserts that it responded to all of Plaintiffs' discovery requests in good faith and has consistently put Plaintiffs on notice that it does not and did not ever own the loan.  Plaintiffs claim that an unidentified person at EMC verbally informed them that EMC owned their loan.  EMC argues that this is inadmissible hearsay.

EMC points out that Plaintiffs did not respond to EMC's argument that the TILA claim against EMC is time-barred.

Plaintiffs argue that their Chapter 480 claim is based on various problems in the making of the loan and the submission of the account to foreclosure proceedings.  EMC was not involved in the making of the loan, and EMC did not initiate any foreclosure proceedings because it was not the owner of the loan.  Plaintiffs also argue that EMC's conduct in this litigation supports the Chapter 480 claim, but Plaintiffs were required to have a reasonable basis for their claims before filing the EMC Compliant.  The parties' relationship during the litigation is governed by the Federal Rules of Civil Procedure, not Chapter 480.  Thus, Plaintiffs' Chapter 480 claim has no merit.

EMC argues that its Motion for Sanctions is well founded.  EMC is not a necessary party, and the EMC Motion for Sanctions did address the EMC Complaint.  Plaintiffs had numerous opportunities to dismiss the EMC complaint, but they refused.

## III. **Fremont's Motion for Sanctions**

In the Fremont Motion for Sanctions, Fremont states that, by Warranty Deed dated November 22, 2006, Benjamin Narvaes and Jonathan Christopher Narvaes conveyed the property at issue to Plaintiffs.  As part of this transaction, Plaintiffs obtained the subject $650,000.00 loan.  Fremont transferred ownership of the loan to Carrington Mortgage Loan Trust, Series 2007-FRE1 Asset-Backed Pass-Through Certificates on January 30, 2007 and since that time has had no interest in the loan.  Fremont

11

transferred servicing rights to EMC on May 1, 2007.

Fremont argues that sanctions against Plaintiffs and Plaintiffs' counsel are warranted under Rule 11 because the claims against Fremont are without legal and factual support. Fremont seeks an award of attorney's fees and costs incurred since May 21, 2008,[5] and dismissal of the instant case.

Fremont states that, beginning May 21, 2008, it attempted to educate Plaintiffs on their claims' lack of merit. Fremont alleges that it repeatedly informed Plaintiffs that it no longer held an interest in the loan.  Upon learning of the filing of Narvaes v. Wells Fargo, Fremont demanded dismissal of the instant case, but Plaintiffs refused.

Fremont contends that Plaintiffs' claims against it are baseless as a matter of law because Plaintiffs obtained the loan to finance the transfer of title.  It was therefore a residential mortgage transaction, not a refinance, and Plaintiffs are not entitled to rescission under the TILA.  Plaintiffs offer no support for their claim that the loan was a refinance. Elena Narvaes was not a consumer for purposes of the loan transaction because she did not have an ownership interest in the property before the conveyance.  Although the loan extinguished

---

[5] On that date, Fremont first provided Plaintiffs' counsel with the legal and factual bases for Fremont's claim that Plaintiffs' complaint is meritless and demanded that Plaintiffs dismiss the action.  [Exh. H to Fremont Motion for Sanctions.]

an existing obligation against the property for Benjamin Narvaes,
the loan was not a refinance because Elena was not an obligor
under the original obligation.  Even if the portion of the loan
relating to Benjamin Narvaes was a refinance, the loan was a
hybrid loan which is not subject to rescission under the TILA.
Fremont states that the Federal Reserve Board concurs with this
analysis.

Fremont also reiterates the argument that Plaintiffs'
TILA claim is time-barred.

Fremont notes that Plaintiffs are in default on the
loan and there is no indication that they are able to repay the
loan amount to accomplish rescission.  Courts can grant summary
judgment to a lender in a TILA action for rescission if the
borrower cannot establish his ability to tender the loan
proceeds, less interest, finance charges, etc.

Finally, Fremont argues that, without a valid TILA
claim, Plaintiffs' Chapter 480 claim also fails.  The only bad
acts alleged in the EMC Complaint are attributable to 808
Mortgage, which was not Fremont's agent.  Fremont argues that
there are no facts that can support a Chapter 480 claim against
Fremont.  Even if there was a violation of the TILA, it does not
automatically constitute a violation of Chapter 480.

In their memorandum in opposition, Plaintiffs repeat
many of the arguments raised in their memorandum in opposition to

13

the EMC Motion for Sanctions.   In addition, Plaintiffs argue
that, even if Fremont no longer owns the loan, it is still liable
for rescission because it was the original creditor.   Even if
Fremont cannot terminate the current owner's security interest,
it can return Plaintiffs' down payment and the other funds it
received.

Plaintiffs argue that their TILA claims against Fremont
are not time-barred because they are based on Fremont's refusal
to act upon Plaintiffs November 9, 2007 demand for rescission.
Fremont's refusal was within the one-year period before the
filing of the EMC Complaint.   Further, Plaintiffs argue that the
statute of limitations was tolled because they did not receive
any loan documents and could not have discovered the fraud and
other non-disclosures.

Plaintiffs also point out that they did offer to tender
the loan proceeds in their November 9, 2007 demand for rescission
to Fremont and their December 12, 2007 demand to EMC.   Plaintiffs
also argue that, even if they had not or could not offer to
tender, the district court can order modification of the loan.

As to their Chapter 480 claim, Plaintiffs note that
Ms. Buendia told Plaintiffs that she represented Fremont and they
argue that she had apparent authority because she handled the
entire transaction.   Fremont can be held liable for her actions
as a mortgage broker because she was acting as either their agent

or in a joint venture capacity.  Further, even if there is no actionable TILA claim, Plaintiffs alleged diversity jurisdiction as an alternate basis and therefore the federal court can still rule upon the Chapter 480 claim.

Plaintiffs also argue that, under Regulation Z § 226.2(a)(11) and the commentary to the applicable regulations, they are consumers for purposes of rescission, particularly because Benjamin Narvaes already had title to the property. Further, if any consumer in a transaction has the right to rescind, the right applies to all other consumers in the transaction as well.  Plaintiffs argue that the loan was a refinance under Regulation Z § 226.20(a) and that is a separate basis for TILA rescission.  According to Plaintiffs, TILA's purposes support their position and the authority that Fremont relies upon is inapposite.

Plaintiffs argue that the loan and mortgage are void under Chapter 480, even if there is no violation of the TILA. They were lured into a disadvantageous loan through a typical bait and switch scheme by an unscrupulous lender.  Plaintiffs therefore argue that their Chapter 480 claim against Fremont is sound.

Plaintiffs also argue that they have a contractual right to rescind the loan according to the right to cancel notice that they signed at the closing.

15

Plaintiffs therefore argue that the Fremont Motion for Sanctions is baseless.  As with the EMC Motion for Sanctions, Plaintiffs also argue that the Fremont Motion for Sanctions is untimely, must be directed at a pleading, and chills consumer litigation.

In its reply, Fremont reiterates many of the arguments that EMC raised in the reply for the EMC Motion for Sanctions. In addition, Fremont emphasizes that the loan was a residential mortgage transaction, not a refinance.  The loan was to fund Elena Narvaes' acquisition of title and therefore the original loan and the loan at issue in this case did not involve the same consumers.  Fremont alleges that Plaintiffs ignore the fact that hybrid loans are not subject to the TILA.

Further, because the loan was not a refinance, the TILA did not apply and Fremont was not required to honor Plaintiffs' demand for rescission.  Plaintiffs' demand for rescission therefore did not create an independent damages claim under the TILA.  Further, Plaintiffs' damages claim is based on events prior to the demand for rescission and those aspects of the claim are clearly time-barred.

Fremont further argues that Plaintiffs must do more than promise to tender the rescission amount; they must prove that they are able to do so.  There is no such evidence in this case.

16

Finally, Fremont reiterates that, without a valid TILA claim against it, Plaintiffs' Chapter 480 claim also fails.

## **DISCUSSION**

Federal Rule of Civil Procedure 11 states, in pertinent part:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

The Ninth Circuit has stated:

> The standard governing both the "improper purpose" and "frivolous" inquiries is objective. [T]he subjective intent of the . . . movant to file a meritorious document is of no moment. The standard is reasonableness. The "reasonable man" against which conduct is tested is a competent attorney admitted to practice before the district court.

17

G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003) (citations and quotation marks omitted) (alterations in original).  "The pleader, at a minimum, must have a good faith argument for his or her view of what the law is, or should be.  A good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after reasonable inquiry."  King v. Idaho Funeral Serv. Ass'n, 862 F.2d 744, 747 (9th Cir. 1988) (citation and quotation marks omitted).  "Where . . . the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it."  Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002) (citation omitted).

I.   **EMC Motion for Sanctions**

        EMC argues that Plaintiffs' TILA claims against it are frivolous because it is merely a servicer of Plaintiffs' loan and it has never owned the loan.  Plaintiffs concede that, if EMC never owned an interest in loan, it would not be liable for rescission.  Plaintiffs, however, argue that EMC would be liable for rescission if it owned Plaintiffs' loan at any point in time.  See 15 U.S.C. § 1641© ("Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the

18

transaction as against <u>any</u> assignee of the obligation." (emphasis added)), (f)(1) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation."). Plaintiffs also contend that, even if EMC never owned Plaintiffs' loan, EMC should be estopped from denying ownership of Plaintiffs' loan based on its past representations to Plaintiffs. <u>See</u>, <u>e.g.</u>, <u>In re Meyer</u>, 379 B.R. 529, 551-54 (Bankr. E.D. Pa. 2007). Although this Court expresses no opinion on the Plaintiffs' likelihood of prevailing on their rescission claim against EMC, this Court cannot find that the claim is legally or factually baseless. Similarly, insofar as Plaintiffs argue that EMC's failure to honor their request for rescission also constitutes an unfair and deceptive trade practice, [Complaint at ¶ 40,] this Court cannot find that Plaintiffs' Chapter 480 claim against EMC is frivolous. The merits of the parties' positions would be more appropriately addressed in a motion for summary judgment. This Court therefore FINDS that EMC is not entitled to Rule 11 sanctions.

## II.   <u>Fremont Motion for Sanctions</u>

Fremont first argues that TILA does not apply because Plaintiffs' loan was an acquisition loan, not a refinance. The original title to the property and the original loan were in

Benjamin Narvaes' and Jonathan Narvaes' name.  Elena Narvaes did not have title to the property prior to the transaction.  The purpose of the transaction was to allow Benjamin Narvaes to buy out his brother's interest and to add his wife to the title. Under the TILA, the right to rescission does not apply to a residential home mortgage.  <u>See</u> 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1).  "The term 'residential mortgage transaction' means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  15 U.S.C. § 1602(w); <u>see also</u> 12 C.F.R. § 226.2(a)(24).

Plaintiffs, however, cite 12 C.F.R. § 226.2(a)(11), which states "for purposes of rescission under §§ 226.15 and 226.23, the term [consumer] also includes a natural person in whose principal dwelling a security interest is or will be retained or acquired, if that person's ownership interest in the dwelling is or will be subject to the security interest." Plaintiffs argue that the loan cannot be an acquisition loan as to Benjamin Narvaes and he is therefore entitled to rescission rights.  Plaintiffs also argue that the commentary to § 226.2(a)(24) states that the right of rescission should apply when credit is extended to one joint owner to buy out another

joint owner.

Fremont argues that, if the loan at issue in this case was a refinance as to Benjamin, it is at best a hybrid loan, to which TILA does not apply.  In support of this proposition, Fremont cites Bainer v. Citicorp Mortgage, Inc., 673 A.2d 541 (Conn. 1994), and Comment 23(f)-3mm CCH Consumer Credit Guide ¶ 3416.03.  Insofar as there no binding authority supporting Fremont's position, this Court finds that Plaintiffs' TILA claims are based on a nonfrivolous argument for the extension or modification of existing law.

Fremont further argues that Plaintiffs' TILA claims based on the execution of the loan documents are frivolous because Plaintiffs failed to bring the claims within one year after the documents were signed.  See 15 U.S.C. § 1640(e); Meyer v. Ameriquest Mortgage Co., 342 F.3d 899, 902 (9th Cir. 2003). Plaintiffs argue that the statute of limitations should be tolled because Ms. Buendia failed to explain the loan documents to them and did not provide them with copies of the loan documents, preventing Plaintiffs from being able to discover the TILA violations.  See King v. California, 784 F.2d 910, 915 (9th Cir. 1986) (stating that "the limitations period in Section 1640(e) runs from the date of consummation of the transaction but that the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower

21

discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action"). Plaintiffs' TILA claims based on Fremont's response to their rescission request were filed well within the one-year statute of limitations.  This Court therefore finds that Plaintiffs' statute of limitations arguments are not frivolous.

Fremont next argues that Plaintiffs' rescission claims must be dismissed because they are in default on the loan and have not established that they would be able to tender the rescission amount.  Fremont cites Yamamoto v. Bank of New York, 329 F.3d 1167 (9th Cir. 2003), in support of its position.  The court in Yamamoto, however, stated that the decision to require a plaintiff to prove his ability to repay the loan proceeds before deciding whether rescission is warranted "lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds."  Yamamoto, 329 F.3d at 1173.  In Yamamoto, there was clear evidence that the plaintiff could not pay back what she received, less interest, finance charges, etc.  See id.  In the present case, Plaintiffs did offer to tender the rescission amount in their rescission letter to Fremont.  [Exh. A to EMC Complaint.]  Further, even if Plaintiffs are not now able to tender, the decision to dismiss the action would still be within the district judge's discretion.  This

22

Court there rejects Fremont's argument that Plaintiffs' rescission claim is frivolous because of their inability to tender.

Finally, Plaintiffs' Chapter 480 claim is based on the same conduct which allegedly violated the TILA.  [EMC Complaint at ¶¶ 36-40.]  Insofar as this Court has found that Plaintiffs' TILA claims against Fremont are not frivolous, this Court also finds that Plaintiffs' Chapter 480 claims against Fremont are not frivolous.

Although this Court expresses no opinion on Plaintiffs' likelihood of success on their claims against Fremont, this Court FINDS that Fremont is not entitled to sanctions under Rule 11.

<u>**CONCLUSION**</u>

On the basis of the foregoing, this Court HEREBY FINDS AND RECOMMENDS that EMC's Motion for Sanctions Against Benjamin M. Narvaes, Elena V. Narvaes, John Harris Paer, filed March 4, 2009, and Fremont's Motion for Sanctions Against Benjamin M. Narvaes, Elena V. Narvaes, John Harris Paer, filed March 4, 2009, be DENIED.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, May 5, 2009.



_/S/ Leslie E. Kobayashi_____

Leslie E. Kobayashi
United States Magistrate Judge

**BENJAMIN NARVAES, ET AL. V. EMC MORTGAGE CORPORATION, ET AL., ETC**; CIVIL NO. 07-00621 HG-LEK; FINDINGS AND RECOMMENDATION TO DENY DEFENDANTS' MOTIONS FOR SANCTIONS