IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BENJAMIN M. NARVAES and ELENA V. NARVAES, | ) ) ) | Civ. No. 07-00621 BMK |
| Plaintiffs, | ) ) ) | ORDER DENYING DEFENDANT FREMONT INVESTMENT AND LOAN'S MOTION FOR |
| vs. | ) ) | SUMMARY JUDGMENT; ORDER GRANTING DEFENDANT EMC |
| EMC MORTGAGE CORPORATION and FREMONT INVESTMENT AND LOAN, | ) ) ) ) | MORTGAGE CORPORATION'S MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) ) | |
| _____ | ) ) | |
| FREMONT INVESTMENT AND LOAN, | ) ) ) | |
| Third-Party Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| 808 HOME MORTGAGE INC., et. al., | ) ) ) | |
| Third-Party Defendants. | ) ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT FREMONT INVESTMENT AND LOAN'S
MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING
DEFENDANT EMC MORTGAGE CORPORATION'S
MOTION FOR SUMMARY JUDGMENT

Before the Court are Defendants Fremont Investment and Loan and

EMC Mortgage Corporation's Motions for Summary Judgment on all claims

brought by Plaintiffs Benjamin and Elena Narvaes.  The Court heard these Motions

on August 7, 2009.  After careful consideration of the Motions, the supporting and

opposing memoranda, and the arguments of counsel, the Court DENIES Fremont's

Motion and GRANTS EMC's Motion.

<u>FACTUAL BACKGROUND</u>

Plaintiffs Benjamin and Elena Narvaes are married.  Benjamin and his

brother, Jonathan Narvaes, had co-owned the property located at 1318 Hooli

Circle, Pearl City, Hawaii ("the property").  (Benjamin Decl'n ¶ 3.)  In October

2006, Benjamin decided to buy out Jonathan's interest in the property to make it a

family home for Benjamin, Elena, and their minor children.  (<u>Id.</u> ¶¶ 2-3; Elena

Decl'n ¶¶ 2-3.)  At that time, Plaintiffs were approached by Nichole Buendia, who

told them she was a mortgage broker for 808 Home Mortgage ("808 Mortgage")

and would represent the lender as well.  (Benjamin Decl'n ¶¶ 2-3; Elena Decl'n

¶ 2.)

Buendia told Plaintiffs she could refinance the property at 8.8%

interest for six months and would guarantee that after six months, she could

refinance the mortgage to a fixed interest rate between 5.5% and 5.875% for a

30-year period.  (Benjamin Decl'n ¶ 4; Elena Decl'n ¶ 4.)  Relying on Buendia's

promises, Plaintiffs agreed and provided their financial information to her. (Benjamin Decl'n ¶¶ 7, 35; Elena Decl'n ¶ 7; Elena Depo. at 36.)

Buendia brought the closing documents to Plaintiffs' home one evening in November 2006.  (Benjamin Decl'n ¶ 8; Elena Decl'n ¶ 8.)  Buendia was in a rush, would not explain the documents to Plaintiffs, and left them without copies of the documents they signed.  (Benjamin Depo. at 88-89, 147-48; Benjamin Decl'n ¶¶ 9, 11; Elena Decl'n ¶¶ 9, 11.)  No notary was present at the closing.  (Benjamin Decl'n ¶ 10; Elena Decl'n ¶ 10.)  After the closing, Buendia did not return Plaintiffs' phone calls.  (Benjamin Decl'n ¶ 13; Elena Decl'n ¶ 13.)

On January 30, 2007, Fremont transferred ownership of the loan to Carrington Mortgage Loan Trust.  (McCartney Decl'n ¶ 7.)  Since that time, Fremont has owned no interest in the loan.  (Id.)  On May 1, 2007, Fremont transferred servicing rights of the loan to EMC.  (Id. ¶ 6.)

In July 2007, Plaintiffs first learned that Fidelity National Title was involved in the loan when they received from Fidelity a Final HUD-1 statement and a recorded copy of the mortgage.  (Benjamin Decl'n ¶ 14; Elena Decl'n ¶ 14.) Plaintiffs then learned that a $16,553 brokerage fee was paid to 808 Mortgage and that the appraisal fee had been reimbursed to 808 Mortgage even though they had already given Buendia a check for that fee.  (Benjamin Decl'n ¶ 15; Elena Decl'n

¶ 15.)  Plaintiffs later learned that there was a $22,000 prepayment penalty on the loan.  (Benjamin Decl'n ¶ 16; Elena Decl'n ¶ 16.)

On November 9, 2007, Plaintiffs' counsel sent a letter to Fremont, rescinding the loan and offering to tender the proceeds of the loan.  (Benjamin Decl'n ¶¶ 24, 29; Elena Decl'n ¶¶ 24, 29.)  Fremont responded that it could not provide any information without Plaintiffs' written consent.  (Benjamin Decl'n ¶ 25; Elena Decl'n ¶ 25.)

On December 12, 2007, Plaintiffs rescinded the loan as to EMC and offered to tender the proceeds of the loan.  (Benjamin Decl'n ¶ 26; Elena Decl'n ¶ 26.)  EMC declined.  (Benjamin Decl'n ¶ 27; Elena Decl'n ¶ 27.)

On December 26, 2007, Plaintiffs brought suit against Fremont and EMC under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and Chapter 480 of the Hawaii Revised Statutes.  Plaintiffs pray for, among other things, rescission of the loan and damages.

## STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law.  See Fed. R. Civ. P. 56(c).  In assessing whether a genuine issue of material fact exists, courts must

resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 2000).

In deciding a motion for summary judgment, the court's function is not to try issues of fact, but rather, it is only to determine whether there are issues to be tried.  Anderson, 477 U.S. at 249.  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

<u>DISCUSSION</u>

I.        Fremont's Motion For Summary Judgment

A.        Plaintiffs' Claim for Rescission Under TILA

The parties agree that rescission is not a remedy for "residential mortgage transactions."  Fremont argues that, because Plaintiffs' loan was a "residential mortgage transaction," they are not entitled to rescind the loan. (Fremont Motion at 7.)  Plaintiffs respond that TILA regulations and corresponding official commentary make clear that this transaction is not a

5

"residential mortgage transaction" and they are therefore entitled to rescind the loan under TILA.  (Plaintiffs' Opp. at 20-22.)

TILA governs the terms and conditions of consumer credit.  Congress designed TILA "to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions."  Semar v. Platte Valley Fed. Sav. & Loan Ass'n., 791 F.2d 699, 705 (9th Cir. 1986.).  "Congress through TILA sought to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit."  King v. California, 784 F.2d 910, 915 (9th Cir. 1986).  Courts construe TILA "as a remedial statute, interpreting it liberally for the consumer."  Id.

Under TILA, the right to rescind does not apply to a "residential mortgage transaction."  15 U.S.C. § 1635(e); 12 C.F.R. § 226.23(f) ("The right to rescind does not apply to the following:  (1) A residential mortgage transaction.").  TILA defines a "residential mortgage transaction" as "a transaction in which a mortgage, deed of trust, . . . or equivalent security interest is created or retained against the consumer's dwelling to finance the acquisition . . . of such dwelling."  15 U.S.C. § 1602(w).

The official commentary from the Federal Reserve Board is helpful in understanding the definition of a "residential mortgage transaction."  See Anderson

6

<u>Bros. Ford v. Valencia</u>, 452 U.S. 205, 219 (1981) (noting the Board's interpretation of its own regulations, "absent some obvious repugnance to the statute, . . . should be accepted by the courts"); <u>Ford Motor Credit Co. v. Milhollin</u>, 444 U.S. 555, 568 (1980) ("judges ought to refrain from substituting their own interstitial lawmaking for that of the Federal Reserve, so long as the latter's lawmaking is not irrational").  In commenting on the definition of that term, the Board states:

> i.  A residential mortgage transaction finances the acquisition of a consumer's principal dwelling. The term does <u>not</u> include a transaction involving a consumer's principal dwelling if the consumer had previously purchased and acquired some interest to the dwelling, even though the consumer had not acquired full legal title.
>
> ii.  Examples of new transactions involving a previously acquired dwelling include . . . <u>an extension of credit made to a joint owner of property to buy out the other joint owner's interest</u>. In these instances, disclosures are not required under § 226.18(q) (assumability policies). However, the <u>rescission rules of §§ 226.15 and 226.23 do apply to these new transactions</u>.

12 C.F.R. Pt. 226.2, Supp. I at § 2(a)(24)(5) (emphases added).  In sum, the term "residential mortgage transaction" <u>excludes</u> the extension of credit to a joint owner who buys out another joint owner's interest and, in such a situation, rescission under TILA is available.

That is precisely the case here.  Benjamin was a joint owner of the property with his brother, Jonathan.  (Benjamin Decl'n ¶ 3; Elena Decl'n ¶ 2.)  Benjamin obtained the Fremont loan to buy out Jonathan's interest in the property.  (Benjamin Decl'n ¶ 3; Elena Decl'n ¶ 3.)  Therefore, according to the Federal Reserve Board's official commentary, the Fremont loan is not a "residential mortgage transaction" and rescission <u>is</u> available to Benjamin.  12 C.F.R. Pt. 226.2, Supp. I at § 2(a)(24)(5).

Fremont argues that, because Elena is also named as an obligor on the Fremont loan but was not a joint owner with Benjamin and Jonathan, Elena somehow negates Benjamin's right to rescind.  (Fremont Motion at 10.)  This Court turns to <u>Briggs v. Provident Bank</u>, 349 F. Supp. 2d 1124 (N.D. Ill. 2004), which dealt with a similar scenario, as guidance.  In <u>Briggs</u>, the plaintiffs were brothers who co-signed loan documents and later sued to rescind under TILA.  349 F. Supp. 2d at 1126.  The court found that one brother, Booker, "did not have the right to rescind."  <u>Id.</u> at 1130.  However, the court found that his brother, Michael, did have the right to rescind.  <u>Id.</u>  The court ultimately concluded that "because Michael was indisputably entitled to TILA disclosures, Michael still has the right to seek rescission of the Loan, which would rescind the Loan as to Michael and Booker."  <u>Id.</u> (citing 12 C.F.R. § 226.23(a)(4) ("When more than one consumer in

a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.")).

Here, Benjamin clearly has the right to rescind the loan. Even assuming Elena does not have the right to rescind, Benjamin "still has the right to seek rescission of the Loan, which would rescind the Loan as to" Elena. <u>See</u> <u>id.</u> TILA's purpose of protecting consumers "who are inherently at a disadvantage in loan and credit transactions" further supports this conclusion. <u>Semar</u>, 791 F.2d at 705; <u>King</u>, 784 F.2d at 915. Accordingly, the Court rejects Fremont's argument that TILA rescission is unavailable to Plaintiffs' loan. Summary judgment as to rescission is denied.[1]

> B.   Plaintiffs' Claim for Damages Under TILA

Fremont argues that the one-year period for filing a TILA claim began to run the day Plaintiffs signed the loan documents in November 2006, and that Plaintiffs' complaint, filed December 26, 2007, is therefore time-barred. (Fremont Motion at 11-12.) Plaintiffs contend that equitable tolling and the discovery rule, which provides that the statute of limitations begins to run when Plaintiffs first

---

[1] Fremont also argues that Plaintiffs' inability to tender the loan rescission amount mandates summary judgment in its favor. Although the Court, in its discretion, may inquire whether Plaintiffs are able to tender the rescission amount, the Court declines to do so at this time. <u>See</u> <u>Yamamoto v. Bank of New York</u>, 329 F.3d 1167, 1170 (9th Cir. 2003).

learn of their injury, apply to their TILA claim, and that they did not discover their injury until months after securing the loan.

An action for damages under TILA must be filed "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  Plaintiffs do not dispute that they filed suit more than one year after signing the loan documents.  Fremont argues that their TILA damages claim is therefore time-barred because the statute of limitations began to run on the day the loan documents were signed and equitable tolling and the discovery rule should not apply.  However, the Ninth Circuit has held that a strict interpretation of the statute of limitations is inappropriate in TILA cases.  <u>King v. California</u>, 784 F.2d 910, 914 (9th Cir. 1986) ("[A]n inflexible rule that bars suit one year after consummation is equally inconsistent with legislative intent.").  The court held, rather, that "the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitation period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action."  <u>Id.</u> at 915; <u>see also</u> <u>Magnum v. Action Collection Services, Inc.</u>, No. 08-35191, at 10124 (9th Cir. Aug. 4, 2009) ("We have made it clear that, in general, the discovery rule applies to the statute of limitations in federal litigation.").

Moreover, the case cited by Fremont does not support Fremont's position as applied to the facts of the present case. (Fremont Motion at 11. (citing Meyer v. Ameriquest Mortgage Co., 342 F.3d 899 (9th Cir. 2003)). In Meyer, the court explicitly left aside the question of the applicability of equitable tolling and the discovery rule "because even under the more expansive [discovery rule], the one-year period has run." 342 F.3d at 902. This was because the plaintiffs in Meyers "were in full possession of all information relevant to the discovery of a TILA violation" and they had "introduced no evidence of undisclosed credit terms, or of fraudulent concealment or other actions on the part of [the defendants] that prevented [the plaintiffs] from discovering their claim." Id.

The facts in this case are starkly different than those of Meyer. Plaintiffs received no documents at the closing, key terms were not disclosed to them, they were rushed through the proceeding, given no opportunity to examine the documents, and were misled as to whether Buendia was an agent of Fremont. (Benjamin Decl'n ¶¶ 4-13; Elena Decl'n ¶¶ 4-13.) Plaintiffs believed Buendia that they would be able to refinance their mortgage six months after the closing and had no reason to know this information was wrong until six months after the closing when Buendia did not refinance their loan terms. Further, Plaintiffs first received documentation related to their loan transaction on July 13, 2007 from Fidelity

11

National Title.  This was the first time they learned that certain terms, including the broker fee, double payment of the appraisal fee, and the prepayment penalty fee, had not been disclosed to them.  (Benjamin Decl'n ¶¶ 14-16; Elena Decl'n ¶¶ 14-16.)

Viewing the facts in the light most favorable to Plaintiffs, they had no reasonable opportunity to discover their injury until several months after securing the loan.  Given that they brought suit only a month after signing the loan documents, their damage claim is not time-barred.  Summary judgment as to this claim is denied.

C.    Plaintiffs' State Law Claim Under Chapter 480

Fremont contends that summary judgment is warranted on Plaintiffs' state law claim, arguing that "[t]he only 'bad acts' in the Complaint are those attributable to 808 Mortgage and its alleged agents," who Fremont insists are not its own agents.  (Fremont Motion at 18.)

Chapter 480 of the Hawaii Revised Statutes makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Haw. Rev. Stat. § 480-2.  A practice is "unfair" under Hawaii law when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  Rosa v. Johnston, 3 Haw.

App. 420, 427, 651 P.2d 1228, 1234 (Haw. Ct. App. 1999).  A deceptive practice is

an "act causing, as a natural and probable result, a person to do that which he

would not otherwise do."  E. Star, Inc. v. Union Bldg. Materials Corp., 6 Haw.

App. 125, 133, 712 P.2d 1148, 1154 (Haw. Ct. App. 1985).

     Under Hawaii law, an "agency relationship may be created through

actual or apparent authority."  Cho Mark Oriental Food, Ltd. v. K&K Int'l, 73

Haw. 509, 515, 836 P.2d 1057, 1061 (Haw. 1992).  "Actual authority exists only if

there has been a manifestation by the principal to the agent that the agent may act

on his account and consent by the agent so to act, and may be created by express

agreement or implied from the conduct of the parties or surrounding

circumstances."  Id. (internal citations omitted).  "Implied actual authority may

arise either independent of any express grant of authority or it may arise as a

necessary or reasonable implication required to effectuate some other authority

expressly conferred by the principal."  Id. at 516, 836 P.2d at 1062.

     Fremont argues that it did not authorize 808 Mortgage or Buendia to

act as its agents and points to the Broker Agreement between Fremont and 808

Mortgage as evidence that no agency relationship existed.  According to Plaintiffs,

however, Buendia told them numerous times that she represented the lender.

(Benjamin Declaration ¶¶ 2, 4, 6; Elena Declaration ¶¶ 2, 4, 6.)  Viewing the

evidence in Plaintiffs' favor, a genuine issue of material fact exists as to whether Buendia or 808 Mortgage were Fremont's agents for purposes of the state law claim.  Indeed, the facts surrounding Buendia's representation of Fremont remain undeveloped, and the parties have not fully briefed their positions on the Chapter 480 claim.  Accordingly, the Court denies summary judgment on this claim.

II.        EMC's Motion For Summary Judgment

      A.        Plaintiffs' Claim Under TILA

Plaintiffs claim EMC engaged in deceptive conduct in relation to their loan in violation of TILA.  EMC argues that Plaintiffs' claim fails as a matter of law.

An action under TILA may only be maintained against a "creditor" or its assignees.  15 U.S.C. §§ 1640 & 1641.  TILA defines a "creditor" as "a person who both (1) regularly extends . . . consumer credit . . . , and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness."  15 U.S.C. § 1602(f).  Plaintiffs do not contest that "if EMC were only a servicer and never had an ownership interest in the loan, it is not subject to TILA recision."  (Plaintiffs' Opp. at 13.)

EMC offers evidence that it "was not involved in the origination of the Loan and that EMC has never owned an interest in the Loan."  (Stephenson

14

Decl'n ¶ 5.)  Plaintiffs do not challenge the accuracy of EMC's evidence.  Rather, they contend that EMC's prior statements and conduct estop it from denying ownership of the loan, or in the alternative, create an issue of fact as to whether EMC ever owned an interest in the loan.

The arguments put forth by Plaintiffs are ultimately futile.  EMC's uncontested declaration demonstrates that EMC is outside the class of defendants against whom suit under TILA can be maintained.  EMC never had an ownership interest in the loan; EMC was merely a servicer of the loan.  Furthermore, EMC purchased the servicing rights to the loan several months after the loan was issued, and EMC was in no way involved in the transaction in which Plaintiffs secured the loan.  Even if EMC were estopped from denying ownership and remained a party to this litigation, as the servicer of the loan without any ownership interest in the loan, EMC is incapable of granting Plaintiffs the relief they seek.  Therefore, Plaintiffs' TILA claim against EMC is dismissed.

B.    Plaintiffs' State Law Claim Under Chapter 480

Plaintiffs contend that, even if their TILA claim is dismissed, their claim under Chapter 480 is viable.  As stated above, Chapter 480 makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Haw. Rev. Stat. § 480-2.

15

It is undisputed that EMC purchased the servicing rights to Plaintiffs'
loan on May 1, 2007, more that five months after closing.  This means EMC
arrived on the scene long after the events that give rise to the core of Plaintiffs'
claim.  However, Plaintiffs argue that certain statements and acts by EMC
constituted material representations and omissions likely to deceive a reasonable
consumer, thereby violating Chapter 480.  See Courbat v. Dahana Ranch, Inc., 111
Haw. 254, 261-63, 141 P.3d 427, 434-36 (Haw. 2006).  Plaintiffs contend that
EMC, through its employee, affirmatively stated that it owned the loan when Elena
twice called EMC in July 2007.  (Plaintiffs' Opp. at 19-20.)  They also argue that
EMC created an impression of ownership when it sent them a letter on December
11, 2007, stating in part, "we have forwarded your account to an attorney/trustee to
immediately initiate foreclosure proceedings."  (Id. at 20.)  Plaintiffs also point to
what they characterize as evasiveness and intransigence by EMC in response to
discovery requests.

The statements and omissions attributed to EMC do not constitute
material misrepresentations likely to deceive a reasonable consumer.  Furthermore,
it is uncontested that these representations came long after Plaintiffs entered into
their loan and mortgage agreement.  Similarly, the issues related to discovery arose
only after the filing of this lawsuit.  These subsequent actions by EMC cannot be

rationally related back to the circumstances surrounding the signing of the loan documents, which is the crux of Plaintiffs' alleged injury.  Therefore, the Court concludes that summary judgment is warranted on the state law claim against EMC.

<u>CONCLUSION</u>

For the foregoing reasons, the Court DENIES Fremont's Motion For Summary Judgment and GRANTS EMC's Motion For Summary Judgment.  The Clerk of Court is directed to enter judgment in favor of EMC as to all claims against it.

DATED:  Honolulu, Hawaii, August 18, 2009.

IT IS SO ORDERED.



   /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

<u>Narvaes v. Fremont Investment & Loan, et al.</u>, Civ. No. 07-00621 BMK; ORDER DENYING DEFENDANT FREMONT INVESTMENT AND LOAN'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING DEFENDANT EMC MORTGAGE CORPORATION'S MOTION FOR SUMMARY JUDGMENT.